UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIGMA CONSTRUCTORES, S.A.,<br><br>7 Avenida 5-62 Sector A-3<br>San Cristobal, Zona 8, Mixco<br>Guatemala<br><br>*Petitioner*,<br><br><br>v.<br><br><br>REPUBLIC OF GUATEMALA,<br><br>*Respondent*. | Civil Action No. _____ |

## PETITION TO CONFIRM FOREIGN ARBITRAL AWARDS

Petitioner Sigma Constructores, S.A. ("Sigma" or "Petitioner"), by and through its

undersigned counsel, Herbert Smith Freehills New York LLP, files this petition

("Petition") pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 207, for an order

and judgment confirming three arbitration awards rendered under the Conciliation and

Arbitration Rules of the Arbitration and Conciliation Center of the Guatemalan Chamber

of Commerce and the Cenac Foundation, Arbitration and Conciliation Center (the

"CENAC Rules")[1] against Respondent Republic of Guatemala ("Guatemala" or

---

[1]    The name of the CENAC Rules in Spanish is *Reglamento de Conciliación y Arbitraje
del Centro de Arbitraje y Conciliación de la Cámara de Comercio de Guatemala y de
la Fundación Cenac, Centro de Arbitraje y Conciliación*.

"Respondent," and collectively with Petitioner, the "Parties").  In support of this Petition,

Petitioner alleges as follows:

## NATURE OF THE PROCEEDING

1.  This Petition is to confirm the following three international arbitral awards

(collectively, the "Awards") rendered in favor of Petitioner and against Respondent in

three arbitrations duly administered under the CENAC Rules:

> a.  the unanimous award rendered by a three-person tribunal on September 20,
>
> 2019 ("Award 1") [2] in the case of *Sigma Constructores, Sociedad Anónima*
>
> *v. Republic of Guatemala*, Arbitration and Conciliation Center of the
>
> Guatemalan Chamber of Commerce Case No. 13-2018 ("Arbitration 1");
>
> b.  the unanimous award rendered by a three-person tribunal on February 2,
>
> 2021 ("Award 2") [3] in the case of *Sigma Constructores, Sociedad Anónima*
>
> *v. Republic of Guatemala*, Cenac Foundation, Arbitration and Conciliation
>
> Center Case No. 11-2019 ("Arbitration 2"); and
>
> c.  the unanimous award rendered by a three-person tribunal on March 5, 2021
>
> ("Award 3") [4] in the case of *Sigma Constructores, Sociedad Anónima v.*

---

[2]    A true and correct copy and certified translation of Award 1 is attached as **Exhibit 1** to the Declaration of Jonathan C. Cross in Support of Petition to Confirm Foreign Arbitral Awards ("Cross Decl."), dated June 10, 2022.  The tribunal amended Award 1 on October 17, 2019 to include the exact amount of legal costs incurred by Sigma. This amendment is included within Exhibit 1.  The legal costs included in this Petition for Award 1 reflect the tribunal's amendment.  Arbitration 1 was administered under the CENAC Rules by the Arbitration and Conciliation Center of the Chamber of Commerce of Guatemala.  (*See* Award 1 at 2).

[3]    A true and correct copy and certified translation of Award 2 is attached as **Exhibit 2** to the Cross Decl.  Arbitration 2 was administered under the CENAC Rules by the CENAC Foundation, Arbitration and Conciliation Center.  (*See* Award 2 at 2).

[4]    A true and correct copy and certified translation of Award 3 is attached as **Exhibit 3** to the Cross Decl.  The tribunal later corrected Award 3 to rectify a typographical error

*Republic of Guatemala*, Arbitration and Conciliation Center of the

Guatemalan Chamber of Commerce Case No. 10-2019 ("Arbitration 3").

2.   In each of the above-referenced arbitrations (collectively, the "Arbitrations"), the

tribunal held that Respondent's failure to pay Petitioner for work that Petitioner performed

pursuant to certain contracts for the construction of roads and infrastructure in Guatemala

supported an award of damages, plus costs and fees, in the total, combined amounts for all

three Awards of GTQ 245,385,479.30 and US$ 418,240.21, plus interest.  (*See* Award 1 at

35-36; Award 2 at 40-42; Award 3 at 40-41).  Each tribunal separately and expressly found

that Respondent had acted in bad faith and had unnecessarily delayed resolution of the

disputes with Petitioner.  (*See* Award 1 at 23; Award 2 at 39; Award 3 at 37-38).

Respondent has not paid any portion of the Awards to date.

3.   The Awards are subject to the Convention on the Recognition and Enforcement of

Foreign Arbitral Awards (June 10, 1958), 21 U.S.T. 2517 (the "New York Convention").

Under Section 207 of the FAA, this Court "shall confirm" the Awards "unless it finds one

of the grounds for refusal or deferral of recognition or enforcement of the award specified

in the [New York] Convention."  9 U.S.C. § 207.  As there are no grounds for refusal or

deferral of recognition of the Awards, the Awards should be confirmed.

## **PARTIES**

4.   Petitioner Sigma is a corporation organized under the laws of Guatemala with its

principal place of business at 7 Avenida 5-62 Sector A-3 San Cristobal, Zona 8, Mixco,

Guatemala.  Petitioner is a construction and engineering company specialized in the design

---

on March 19, 2021, which is not relevant here. The correction is included within
Exhibit 3.  Arbitration 3 was administered under the CENAC Rules by the Arbitration
and Conciliation Center of the Chamber of Commerce of Guatemala.  (*See* Award 3 at
3).

and building of roads, bridges, and other large public works and infrastructure projects in Guatemala.

5.    Respondent Republic of Guatemala is a "foreign state" within the meaning of the Foreign Sovereign Immunities Act (the "FSIA"), 28 U.S.C. § 1603(a).

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this proceeding pursuant to Section 203 of the FAA, which provides that "[a]n action or proceeding falling under the [New York] Convention shall be deemed to arise under the laws and treaties of the United States," and that "district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."  9 U.S.C. § 203.  The United States is a party to the New York Convention.  The recognition and enforcement of the Awards at issue here is governed by the New York Convention.

7.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a) and 28 U.S.C. § 1605(a)(6) because foreign states do not enjoy sovereign immunity in a proceeding brought to confirm an arbitration award that "is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards" such as the New York Convention.  *See* 28 U.S.C. § 1605(a)(6)(B).  In addition, Respondent has waived its immunity by agreeing to arbitrate disputes arising under the contracts that gave rise to the Awards.  *See* 28 U.S.C. § 1605(a)(1).

8.    This Court has personal jurisdiction over Respondent pursuant to 28 U.S.C. § 1330(b).

9.    Venue is proper in this District pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(f)(4).

## FACTUAL BACKGROUND

### The Construction Contracts and the Underlying Disputes

10. The Awards are the result of Respondent's refusal to pay Petitioner certain sums due for work that Respondent accepted and admitted Petitioner had performed under the following three contracts for the rehabilitation of public roads and associated infrastructure in or around Southern and Eastern Guatemala (collectively, the "Construction Contracts"):

   a.  Contract No. 348-2000, dated November 21, 2000 ("Contract 1"),[5] which gave rise to Award 1;

   b.  Contract No. 502-2006-DGC, dated September 25, 2006 ("Contract 2"),[6] which gave rise to Award 2;

   c.  Contract No. 347-2000, dated November 21, 2000 ("Contract 3"),[7] which gave rise to Award 3.

11. Petitioner performed the works required under each Construction Contract and Respondent accepted the works without reservation.  However, Respondent refused to pay for the works in breach of the Construction Contracts and of Guatemalan law.  This left

---

[5]   A true and correct copy and certified translation of Contract 1 is attached as **Exhibit 4** to the Cross Decl.  The General Director of the Directorate of Roads, Mr. Ramiro Edgardo Villatoro, executed Contract 1 on behalf of and "[a]cting in Representation of the State of Guatemala, by delegation bestowed by the Minister of Communications, Infrastructure and Housing . . . ."  (Contract 1 at 2).

[6]   A true and correct copy and certified translation of Contract 2 is attached as **Exhibit 5** to the Cross Decl.  The Vice Minister of Communications, Infrastructure and Housing, Ms. Berta Lilia Del Valle Perez, executed Contract 2 on behalf of and "act[ing] as [the] legal representative of the [S]tate of Guatemala, by delegation granted by the Ministry of Communications, Infrastructure and Housing . . . ."  (Contract 2 at 1).

[7]   A true and correct copy and certified translation of Contract 3 is attached as **Exhibit 6** to the Cross Decl.  The General Director of the Directorate of Roads, Mr. Ramiro Edgardo Villatoro, executed Contract 3 on behalf of and "representing the State of Guatemala, by delegation granted by the Minister of Communications, Infrastructure, and Housing . . . ."  (Contract 3 at 2).

Petitioner with no other option than to initiate arbitration proceedings to recover what it was owed.  Petitioner prevailed in each of the three Arbitrations brought for breach of the Construction Contracts and prevailed in each of the subsequent annulment actions brought against the Awards.  Nevertheless, Respondent still refuses pay its debts.  Petitioner now seeks recognition and enforcement of the Awards as part of its efforts to enforce its right to payment of Respondent's outstanding debts to Petitioner.

12. Performance under the Construction Contracts was governed by, *inter alia*, Guatemala's Law of State Procurement (the "Procurement Law").  (*See* Award 1 at 2; Award 2 at 5; Award 3 at 40).  Articles 55 and 56 of Procurement Law require the relevant government authority in Guatemala to establish a "commission" for the acceptance and "liquidation" of a covered public works contract once the work under the contract has been accepted.  (*See*, *e.g.*, Award 3 at 19).  Among other functions, the commission establishes the amount of payment due to the contractor for the work as tendered, including interest. (*Id.*).  If the contractor's work has been accepted, the commission must "liquidate" the contract and make payment within 90 days.  (*Id.*).

13. Petitioner duly completed the work required and fully performed under each of the Construction Contracts.  (*See* Award 1 at 26 (noting that the "the works were executed satisfactorily and in accordance with the technical standards of Road Engineering for this kind of projects"); Award 2 at 31 (noting that "the work was executed and accepted"); Award 3 at 25 (noting that Respondent had "acknowledged" and "certified the existence of a debt in favor of SIGMA" under Contract 3), 12 (noting that Guatemala "received the works to its full satisfaction in final form").  Notably, Respondent did not object to the quality of Petitioner's work, the timeliness of Petitioner's delivery, or otherwise call the

performance of Petitioner's work into question.  (*See* Award 1 at 25-26; Award 2 at 29; Award 3 at 17).

14. However, Respondent failed to liquidate any of the Construction Contracts.  (*See* Award 1 at 20-21; Award 2 at 30; Award 3 at 31-32).  In the event that a commission established under the Procurement Law fails to liquidate a contract within the prescribed period of 90 days following acceptance, Article 57 of the Procurement Law authorizes the contractor to submit its own "liquidation plan" to the commission.  (*See* Award 1 at 32; Award 2 at 32; Award 3 at 30).  The commission must approve or reject the contractor's liquidation plan within one month of receipt.  (*Id.*).  If the plan is not approved or rejected within one month, it is deemed to be approved by operation of law under Article 57 of the Procurement Law.  (*See* Award 1 at 21; Award 2 at 32; Award 3 at 30).

15. Petitioner duly presented its own liquidation plans for each of the Construction Contracts under Article 57 of the Procurement Law.  (*See* Award 1 at 21; Award 2 at 33; Award 3 at 25).  Respondent failed to approve or reject any of Petitioner's liquidation plans in accordance with the Procurement Law.  (*Id.*).

16. Each of the Construction Contracts provides for the resolution of disputes arising under the relevant Contract through an "arbitration in equity" conducted pursuant to the CENAC Rules.

17. The arbitration clause in Section Nineteenth ("Controversies") of Contract 1 provides as follows:

> 'THE MINISTRY' and 'THE CONTRACTOR' agree that controversies, differences, conflicts, or claims that arise as a result of this contract, both during its term and at is termination, for any reason, will be resolved between the parties in a direct and amicable manner, in the case it were not possible to come to an agreement, the issue or issues to be resolved will be submitted to an arbitration in equity, in accordance with the [CENAC Rules], institution to which they confide the administration of

the arbitration and the authorization to appoint the arbitrators that will resolve the conflict, the arbitration taking place in Guatemala City.

(Contract 1, § 19). [8]

18. The arbitration clause in Section Eighteenth ("Controversies") of Contract 2

provides as follows:

> a) The parties agree that controversies resulting from the execution and interpretation of this contract, bonds and insurance, will be resolved between the appearing parties in a direct way; b) If it was impossible to arrive to an agreement, the parties must turn to the conciliatory process established by the Arbitration Law, which will take place under the administration and rules of [CENAC]. The conciliatory and arbitration process professional fees charged by the conciliator and the arbitration center (Fundación CENAC) will be paid by 'THE CONTRACTOR' no matter which party has requested to initiate the conciliatory process; c) If it is impossible to arrive to a solution through a conciliatory process the issue or issue will be submitted to arbitration in equity, in accordance with the Arbitration Law, which will take place under the [CENAC Rules]. The professional fees of the arbitrators, secretary and 'Fundación CENAC' will be paid by 'THE CONTRACTOR' but are subject of the arbitrators' decision of costs. On the bonds and insurance policies it must be stated on clear, precise, and bold face letter the following text: 'THIS CONTRACT INCLUDES AN[] ARBITRATION AGREEMENT.'

(Contract 2, § 18). [9]

19. The arbitration clause in Section Nineteenth ("Disputes") of Contract 3 provides as

follows:

> 'THE MINISTRY' and 'THE CONTRACTOR' agree that the disputes, differences, conflicts or claims arising from the agreement during its term as well as upon its expiration, by any circumstance, will be settled by the parties in an direct and amicable manner, but if it were not possible to reach an agreement, the claims to be resolved will be subject to an

---

[8]  The term "THE MINISTRY" refers to the Guatemalan Ministry of Communications, Infrastructure, and Housing (the "Ministry"). The Ministry's representative executed Contract 1 on behalf of Guatemala. (*See supra* at ¶ 10, n.5; Contract 1, § 1).

[9]  The term "parties" refers to Respondent and Petitioner; the term "THE CONTRACTOR" refers to Petitioner. (*See* Contract 2, § 1).

> arbitration in equity, in accordance with the [CENAC Rules] of the Chamber of Commerce of Guatemala, institution which will be in charge of the administration of the arbitration and which is authorized to designate the arbitrators that must solve the conflict, being held the arbitration in Guatemala.

(Contract 3, § 19). [10]

20. In order to vindicate its rights under the Construction Contracts, Petitioner commenced three separate arbitration proceedings against Respondent corresponding to the three Construction Contracts, as described below.

**Arbitration and Award 1**

21. Petitioner initiated Arbitration 1 on October 10, 2018 seeking damages from Respondent for its failure to pay Petitioner for the works performed under Contract 1. (Award 1 at 7). The three-person arbitral tribunal was constituted on February 6, 2019 in a hearing attended by the Parties and their representatives and in accordance with the CENAC Rules. (Award 1 at 6). The seat of the arbitration was Guatemala City, Guatemala. (Award 1 at 2).

22. Petitioner asked the tribunal to issue an award ordering Respondent (i) to pay the amount specified in Petitioner's liquidation plan for Contract 1, plus Contractual Interest,[11] which, as of May 31, 2018, totalled GTQ 37,728,535.81; (ii) to pay Contractual Interest on

---

[10]    The term "THE MINISTRY" refers to the Guatemalan Ministry of Communications, Infrastructure, and Housing. The Ministry's representative executed Contract 3 on behalf of Guatemala. (*See supra* at ¶ 10, n.7; Contract 3, § 1). The term "THE CONTRACTOR" refers to Petitioner. (*See id.* at 3-4).

[11]    The term "Contractual Interest" refers, for each of Awards 1, 2, and 3, to the rate established in each of Contracts 1, 2, and 3, *i.e.*, the rate mandated by Article 63 of the Procurement Law, which provides in relevant part that "interest[] will be calculated on the amount of the debt, based on the maximum interest rate determined by the [Guatemalan] Monetary Board . . . ." (*See* Award 1 at 34; Award 2 at 41; Award 3 at 41; Contract 1 at 9; Contract 2 at 7; Contract 3 at 10). The Monetary Board is an entity established under Article 132 of the Guatemalan Constitution and is comparable to the US Federal Reserve Board.

GTQ 12,125,349.95, which was the amount Respondent failed to pay for "work estimate"[12] No. 25 of Contract 1,[13] to be calculated from June 1, 2018 until payment; (iii) to pay the costs of the arbitration; (iv) to compensate Petitioner for fees incurred for experts; and (v) to compensate Petitioner for legal costs at the rate specified in Decree 111-96 as enacted by the Guatemalan Congress and made applicable to the awarding of legal costs in arbitration proceedings in Guatemala. (Award 1 at 8-9).

23. Respondent, through the Office of the Attorney General of Guatemala and its appointed counsel, fully participated in Arbitration 1. Respondent filed a written submission answering the claim on February 13, 2019. (Award 1 at 9). Pursuant to a timetable set by the tribunal, the Parties each made submissions on evidence. (Award 1 at 11-13). The tribunal held a hearing in which the Parties presented their closing arguments in the case on July 22, 2019. (Award 1 at 15-16).

24. To confirm the accuracy of the amounts claimed by Petitioner in its liquidation plans, the tribunal in Arbitration 1 appointed an independent expert to review Petitioner's liquidation plan. (*See* Award 1 at 13). The independent expert confirmed the accuracy and validity of the amounts claimed by Petitioner, with minor adjustments, in Petitioner's

---

[12]    The term "work estimates" as used in this Petition translates the term "estimaciones de trabajo" as used in Articles 59 and 62 of the Procurement Law and under each of the three Construction Contracts. Article 59 of the Procurement Law provides that "work estimates" are payments made to contractors for work performed and accepted within one month. In public works contracts governed by the Procurement Law, the State pays the contractor as the work progresses. Pursuant to this practice, the contractor submits a report to the relevant government authority each month attesting to the work performed during the preceding month. The receipt and acceptance of each such monthly report or "work estimate" by the relevant government authority triggers a payment obligation on the part of the State under the public works contract.

[13]    The principal amount owed for work estimate No. 25, *i.e.*, GTQ 12, 125,349.95, was included in Petitioner's liquidation plan for Contract 1.

liquidation plan. (*See* Award 1 at 14). However, Respondent did not challenge the reports or findings produced by the independent expert in Arbitration 1. (*See* Award 1 at 15).

25. On September 20, 2019, following multiple rounds of written submissions, the unanimous tribunal rejected Respondent's defenses and awarded money damages to Petitioner under Contract 1 in the total amount of GTQ 42,265,404.02 and US$ 120,236.28, plus interest, as follows:

   a. GTQ 39,302,701.42, which amount includes Contractual Interest that had accrued up to June 30, 2019, for works Petitioner performed under Contract 1;

   b. Contractual Interest to be calculated from July 1, 2019 until payment on GTQ 12,125,349.95, corresponding to Respondent's non-payment of work estimate No. 25 under Contract 1;

   c. US $ 114,916.28 for arbitration costs;

   d. US $ 5,320.00 for expert fees; and

   e. GTQ 2,962,702.60, to compensate Petitioner for its legal costs in Arbitration 1. (Award 1 at 35-36, 38).

26. In addition, Legal Interest[14] is due on the above sums as a matter of Guatemalan

---

[14]    The term "Legal Interest" as used in this Petition refers to the default rate of interest applied to all awards and judgments under Guatemalan law pursuant to Article 1947 of the Guatemalan Civil Code, which states that legal interest is equivalent to the weighted average of interest rates published by all banks, minus two percentage points. In case of doubt, the rate reported by the Superintendent of Guatemalan Banks ("Superintendencia de Bancos de Guatemala") will prevail. (*See*, *e.g.* Award 3 at 41). The Superintendent of Guatemalan Banks publishes the rate every week, available on the institution's website here: https://www.sib.gob.gt/ConsultaDinamica/?cons=19. A true and correct copy and certified translation of Article 1947 of the Guatemalan Civil Code is attached as **Exhibit 7** to the Cross Decl.

law,[15] apart from the principal amount identified in paragraph 25(b), *i.e.*, GTQ

12,125,349.95, plus Contractual Interest until June 30, 2019.

27. Notably, the tribunal held that Guatemala acted "irresponsibly" and "forced" Sigma

to file Arbitration 1 to vindicate its rights and obtain payment for its work. (Award 1 at

35-36). Moreover, the tribunal also unanimously found that Respondent had acted in "bad

faith" by delaying payment of the sums due to Petitioner under Contract 1:

> [Guatemala] could have resolved this matter within a period much shorter than that elapsed since the delivery of the work, to the detriment of both the contractor and the public treasury, for which reason this Tribunal accepts the Claimant's claim to condemn the State, for litigating in bad faith and for being responsible for the breaches that generated the claims of the claimant in this arbitration process, to the payment of all expenses, including the fees of lawyers who assisted him, in accordance with the corresponding fees, the fees caused by the expert opinion carried out . . . .

(Award 1 at 23).

28. Notwithstanding the tribunal's express condemnation of Respondent's delay

tactics, on October 28, 2019, Respondent sought to have Award 1 set aside by the Fifth

Court of Appeals in Civil and Commercial Matters in Guatemala City, Guatemala.

29. On February 21, 2020, a three-judge panel of the court dismissed Respondent's

challenge and confirmed Award 1. A true and correct copy and certified translation of the

judgment rendered by the court is attached as **Exhibit 9** to the Cross Decl.

30. To date, Respondent has not paid any portion of Award 1.

---

[15]    Pursuant to Article 1946 of the Guatemalan Civil Code, unless otherwise agreed, a debtor will pay interest to the creditor at the applicable Legal Interest rate. A true and correct copy and certified translation of Article 1946 of the Guatemalan Civil Code is attached to the Cross Decl. as **Exhibit 8**. Pursuant to Article 63 of the Procurement Law, amounts pertaining to unpaid work estimates are only subject to Contractual Interest.

**Arbitration and Award 2**

31. Petitioner initiated Arbitration 2 on October 4, 2019 seeking damages from Respondent for its failure to pay Petitioner for the works performed under Contract 2. (Award 2 at 9-12). The three-person arbitral tribunal was constituted on February 20, 2020 in a hearing attended by the Parties and their representatives and in accordance with the CENAC Rules. (Award 2 at 8). The seat of the arbitration was Guatemala City, Guatemala. (Award 2 at 2).

32. Petitioner asked the tribunal to issue an award ordering Respondent (i) to pay the amount specified in Petitioner's liquidation plan for Contract 2, plus Contractual Interest, which, as of December 31, 2019, totalled GTQ 84, 196,704.69; (ii) to pay Contractual Interest on GTQ 34,223,414.91, which was the amount Respondent failed to pay for work estimates Nos. 17, 18, 19, and 20 of Contract 2,[16] calculated from January 1, 2020 until payment; (iii) to pay the costs of the arbitration, including the fees of the arbitrators, the secretary of the tribunal, CENAC, and experts appointed by the tribunal; and (iv) to compensate Petitioner for legal costs at the rate specified in Decree 111-96 as enacted by the Guatemalan Congress and made applicable to the awarding of legal costs in arbitration proceedings in Guatemala. (Award 2 at 11-12).

33. Respondent, through the Office of the Attorney General of Guatemala and its appointed counsel, fully participated in Arbitration 2. Respondent filed a written submission answering the claim on February 27, 2020. (Award 2 at 13). Pursuant to a timetable set by the tribunal, the Parties each made submissions on evidence. (Award 2 at

---

[16]    The principal amount owed for work estimates Nos. 17, 18, 19, and 20, *i.e.*, GTQ 34,223,414.91, was included in Petitioner's liquidation plan for Contract 2.

17-20).  The tribunal held a hearing in which the Parties presented their closing arguments in the case on October 13, 2020.  (Award 2 at 23).

34. To confirm the accuracy of the amounts claimed by Petitioner in its liquidation plan, the tribunal in Arbitration 2 appointed an independent expert to review Petitioner's liquidation plan.  (Award 2 at 20).  The independent expert confirmed the accuracy and validity of the amounts claimed by Petitioner, with minor adjustments, in Petitioner's liquidation plan.  (Award 2 at 30).  However, Respondent did not challenge the reports or findings produced by the independent expert in Arbitration 2.  (Award 2 at 31).

35. On February 2, 2021, following multiple rounds of written submissions, the unanimous tribunal rejected Respondent's defenses and awarded money damages to Petitioner in the total amount of GTQ 86,980,727.28 and US$ 134,011.77, plus interest, as follows:

> a.  GTQ 80,898,350.96, which includes Contractual Interest that had accrued up to December 31, 2020, for works Petitioner performed under Contract 2;
>
> b.  Contractual Interest to be calculated from January 1, 2021 until payment on GTQ 34,223,414.91, in connection with Respondent's non-payment of work estimates Nos. 17, 18, 19, and 20;
>
> c.  US $ 129,531.77, for arbitration costs;
>
> d.  US $ 4,480.00, for expert fees; and
>
> e.  GTQ 6,082,376.32, to compensate Petitioner for its legal costs in Arbitration 2.  (Award 2 at 41).

36. In addition, Legal Interest is due on the above sums awarded by the tribunal in Award 2 as a matter of Guatemalan law, apart from the principal amount identified in

paragraph 35(b), *i.e.*, GTQ 34,223,414.91, plus Contractual Interest until December 31, 2020.  (*See also* Award 2 at 43.)

37. The tribunal also unanimously found that Respondent had "unnecessarily delayed" the resolution of the proceedings, noting that Respondent "could have resolved this matter in a much shorter period of time than that elapsed since the delivery of the work, to the detriment of both the contractor and the public treasury," and therefore that the Tribunal would "accept[] [Petitioner's] request to order [Respondent] to pay all the expenses, including the fees of the attorneys who assisted it in accordance with the corresponding tariffs, and the fees for the expert opinion rendered in the arbitration . . . ."  (Award 2 at 39).

38. Notwithstanding the tribunal's express condemnation of Respondent's delay tactics, on March 3, 2021, Respondent sought to have Award 2 set aside by the First Chamber of the Civil and Commercial Court of Appeals in Guatemala City, Guatemala. On July 19, 2021, a three-judge panel of the court dismissed Respondent's challenge and confirmed Award 2.  A true and correct copy and certified translation of the judgment rendered by the court is attached as **Exhibit 10** to the Cross Decl.

39. To date, Respondent has not paid any portion of Award 2.

## Arbitration and Award 3

40. Petitioner initiated Arbitration 3 on October 2, 2019 seeking damages from Respondent for its failure to pay Petitioner for the works performed under Contract 3. (Award 3 at 6).  The three-person arbitral tribunal was constituted on February 20, 2020 in accordance with the CENAC Rules.  (*Id.*).  The seat of the arbitration was Guatemala City, Guatemala.  (Award 3 at 15).

41. Petitioner asked the tribunal to issue an award ordering Respondent (i) to pay the amount specified in Petitioner's liquidation plan for Contract 3, plus Contractual Interest that had accrued as of December 31, 2019, *i.e.*, GTQ 107,495,585.44; (ii) to pay Contractual Interest on GTQ 18,463,895.14, which was the amount Respondent failed to pay for work estimates Nos. 8, 61, 62, 63, and 64 under Contract 3,[17] calculated from January 1, 2020 until payment; (iii) to pay the costs of the arbitration, including the fees of the arbitrators, the secretary of the tribunal, CENAC, and experts appointed by the tribunal; and (iv) to compensate Petitioner for legal costs at the rate specified in Decree 111-96, as enacted by the Guatemalan Congress and made applicable to the awarding of legal costs in arbitration proceedings in Guatemala. (Award 3 at 16-17).

42. Respondent, through the Office of the Attorney General of Guatemala and its appointed counsel, fully participated in Arbitration 3. Respondent filed a written submission answering the claim on February 28, 2020. (Award 3 at 6-7). Pursuant to a timetable set by the tribunal, the Parties each made submissions on evidence. (Award 3 at 8-10). The tribunal held a hearing in which the Parties presented their closing arguments in the case on October 21, 2020. (Award 3 at 10).[18]

43. To confirm the accuracy of the amounts claimed by Petitioner in its liquidation plans, the tribunal in Arbitration 3 appointed an independent expert to review Petitioner's liquidation plan. (Award 3 at 8). The independent expert confirmed the accuracy and validity of the amounts claimed by Petitioner, "with a cent of difference," in Petitioner's

---

[17]    The principal amount owed for work estimates Nos. 8, 61, 62, 63, and 64, *i.e.*, GTQ 18,463,895.14, was included in Petitioner's liquidation plan for Contract 3.

[18]    Award 3 refers to the date of the hearing as "October 21, 2021." (Award 3 at 10). This is a typographical error; the date of the hearing was on October 21, 2020.

liquidation plan. (Award 3 at 36). However, Respondent did not challenge the reports or findings produced by the independent expert in Arbitration 3. (Award 3 at 36-37).

44. On March 5, 2021, following multiple rounds of written submissions, the unanimous tribunal rejected Respondent's defenses and awarded the following money damages to Petitioner in the total amount of GTQ 116,139,348.00 and US$ 163,992.16, plus interest, as follows:

    a.  GTQ 107,985,440.00, which amount includes Contractual Interest that had accrued up to December 31, 2020, for works Petitioner performed under Contract 3;

    b.  Contractual Interest to be calculated from January 1, 2021 until payment on GTQ 18,463,895.14, in connection with Respondent's non-payment of work estimates Nos. 8, 61, 62, 63, and 64.

    c.  US $ 163,992.16, for arbitration costs;

    d.  GTQ 40,000.00, for expert fees; and

    e.  GTQ 8,113,908.00, to compensate Petitioner for its legal costs in Arbitration 3. (Award 3 at 40-41).

45. In addition, Legal Interest is due on the above sums awarded by the tribunal in Award 3 as a matter of Guatemalan law, apart from the principal amount identified in paragraph 44(b), *i.e.*, GTQ 18,463,895.14, plus Contractual Interest until December 31, 2020. (*See* Award 3 at 41).

46. Notably, the tribunal unanimously found evidence of "'bad faith' on the part of [Respondent]" that "caused delay in the arbitration proceedings." (Award 3 at 38). For example, the tribunal held that Respondent demonstrated a "lack of responsibility" by "presenting unnecessary documents, seeking to confuse the Arbitral Tribunal" (*id*. at 28);

that Respondent's arguments "ha[d] no logical support" and failed to present any "legal basis" for Respondent's opposition (*id*. at 31); that Respondent "did not litigate in good faith, by denying obvious claims . . . and by not submitting evidence to justify the exceptions filed" (*id*. at 37); and that Respondent "*intentionally . . . attempt*[ed] *to conceal the truth*" from the tribunal in Arbitration 3 (*id.* at 38 (emphasis added)).

47. Notwithstanding the tribunal's express condemnation of Respondent's delay tactics, on April 15, 2021, Respondent sought to have Award 3 set aside by the Second Court of the Civil and Commercial Court of Appeals in Guatemala City, Guatemala.  On June 29, 2021, a three-judge panel of the court dismissed Respondent's challenge and confirmed Award 3.  A true and correct copy and certified translation of the judgment rendered by the court is attached as **Exhibit 11** to the Cross Decl.

48. To date, Respondent has not paid any portion of Award 3.

## THE AWARDS SHOULD BE CONFIRMED

### The Requirements for Confirmation are Satisfied

49. The Awards were rendered pursuant to the Parties' Construction Contracts and the CENAC Rules and "aris[e] out of a legal relationship, whether contractual or not, which is considered as commercial," between parties who are not citizens of the United States.  The Awards thus fall within the scope of the New York Convention.  *See* 9 U.S.C. § 202.

50. The Awards were issued in Guatemala, a signatory to the New York Convention. *See* New York Convention, Art. I.

51. The Awards are binding upon the Parties and subject to recognition and enforcement under the New York Convention.  *See* New York Convention, Art. III.

52. This Petition is timely because it has been filed within three years of the date that each of the Awards was made.  *See* 9 U.S.C. § 207.

53. In accordance with Article IV(1) of the New York Convention, Petitioner has supplied duly certified copies of the Awards and duly certified copies of the Construction Contracts containing the Parties' arbitration agreements.  (*See* Exs. 1-6).  In accordance with Article IV(2) of the New York Convention, Petitioner has supplied duly certified translations of the Awards and the Construction Contracts by official or sworn translators. (*Id.*).

54. Petitioner will serve Respondent with notice of this Petition in accordance with the Parties' Construction Contracts and the FSIA.

**There Are No Grounds on Which to Deny Recognition and Enforcement**

55. The exclusive grounds for refusing or denying recognition to the Awards are those set forth in Article V of the New York Convention.  *See TermoRio S.A. E.S.P. v. Electanta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007) (noting that a district court "may refuse to enforce [a New York Convention] award only on the grounds explicitly set forth in Article V of the Convention."); *see also Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 20 (D.D.C. 2011) ("Confirmation proceedings are generally summary in nature" because "the New York Convention provides only several narrow circumstances where a court may deny confirmation of an arbitral award.") (citation omitted); 9 U.S.C. § 207 (providing that a district court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention").

56. "Consistent with the 'emphatic federal policy in favor of arbitral dispute resolution' recognized by the Supreme Court," the FAA "affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards."  *Belize Soc. Dev. Ltd. v.*

*Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 631 (1985)).

57. "[T]he burden of establishing the requisite factual predicate to deny confirmation of an arbitral award rests with the party resisting confirmation, and the showing required to avoid summary confirmation is high." *BCB Holdings Ltd. v. Gov't of Belize*, 110 F.Supp.3d 233, 247 (D.D.C. 2015) (alteration in original) (internal citations and marks omitted); *see also Compagnie Sahelienne d'Entreprise v. Republic of Guinea*, No. CV 20-1536 (TJK), 2021 WL 2417105, at \*4 (D.D.C. June 14, 2021) (noting that the party resisting confirmation of an arbitral award subject to the New York Convention "bears the heavy burden of establishing that one of the grounds for denying confirmation in Article V applies").

58. There are no grounds on which to deny recognition or enforcement of the Awards under Article V of the New York Convention.

59. The grounds for denying recognition or enforcement of an award under Article V of the New York Convention are virtually identical to those for setting aside an award under Article 43 of the Guatemalan Arbitration Law.  A true and correct copy and certified translation of Article 43 of the Guatemalan Arbitration Law is attached as **Exhibit 12** to the Cross Decl.  Respondent already requested that the Awards be set aside in Guatemala. The competent Courts of Appeal in Guatemala reviewed and denied Respondent's requests to annul the Awards and confirmed the Awards.  (*See supra* at ¶¶ 29, 38, 47).

60. The Awards should therefore be confirmed, recognized, and enforced pursuant to 9 U.S.C. § 207 and Article III of the New York Convention, and judgment should be entered in favor of Petitioner and against Respondent in the full amount of the Awards, with the interest and costs as provided therein accruing through the date of this Court's judgment.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioner respectfully requests that this Court:

1.  Confirm, recognize, and enforce the Awards against Guatemala;

2.  Enter judgment against Guatemala in an amount equal to the full amount of Award 1, GTQ 42,265,404.02 and US$ 120,236.28, plus interest in an amount yet to be determined, calculated in accordance with the terms of Award 1;

3.  Enter judgment against Guatemala in an amount equal to the full amount of Award 2, GTQ 86,980,727.28 and US$ 134,011.77, plus interest in an amount yet to be determined, calculated in accordance with the terms of Award 2;

4.  Enter judgment against Guatemala in an amount equal to the full amount of Award 3, GTQ 116,139,348.00 and US$ 163,992.16, plus interest in an amount yet to be determined, calculated in accordance with the terms of Award 3;

5.  Retain jurisdiction over this action and authorize post-judgment discovery to aid in the enforcement of any judgment this Court should issue pursuant to Rule 69 of the Federal Rules of Civil Procedure; and

6.  Award Petitioner such further relief that this Court deems just and proper, including but not limited to Petitioner's costs and fees incident to enforcing the Awards, as well as Petitioner's reasonable attorneys' fees.

Dated: June 10, 2022
       New York, New York

                                    Respectfully submitted,


                                    HERBERT SMITH FREEHILLS
                                    NEW YORK LLP

                    By:    /s/ Jonathan C. Cross
                           Jonathan C. Cross (D.C. Bar No. NY0476)
                           Daniela Páez (D.C. Bar No. NY0479)
                           450 Lexington Ave, 14th Floor
                           New York, New York 10017
                           Tel:  (917) 542-7801
                           Fax:  (917) 542-7601
                           Jonathan.Cross@hsf.com
                           Daniela.Paez@hsf.com

                           *Attorneys for Petitioner Sigma
                           Constructores, S.A.*