## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIGMA CONSTRUCTORES, S.A., | |
| *Petitioner*, | No. 22-cv-1674-TSC-MAU |
| v. | |
| REPUBLIC OF GUATEMALA., | |
| *Respondent*. | |

## <u>REPORT AND RECOMMENDATION</u>

Petitioner Sigma Constructores, S.A. ("Sigma") brings this action to confirm three arbitration awards entered in its favor against Respondent Republic of Guatemala ("Guatemala"). ECF No. 1 at 1;[1] ECF No. 28 at 9. Sigma initiated all three arbitrations under a set of rules local to Guatemala called the Conciliation and Arbitration Rules of the Arbitration and Conciliation Center of the Guatemalan Chamber of Commerce and the Cenac Foundation, Arbitration and Conciliation Center. ECF No. 1 at 1.

Before this Court is Guatemala's Motion to Dismiss the Petition to Confirm Foreign Arbitral Awards or, in the alternative, to Hold this Case in Abeyance. ECF No. 28. The District Court referred this action to this Court for full case management, which includes issuance of a Report and Recommendation on the Motion. Minute Order (Oct. 5, 2023); LCvR 72.3(a)(3). For the following reasons, this Court recommends that Guatemala's Motion to Dismiss be **DENIED** and its alternative request to hold this case in abeyance be **DENIED WITHOUT PREJUDICE**.

---

[1]     Citations are to the page numbers in the ECF headers.

**BACKGROUND**

Sigma is a construction and engineering company organized under the laws of Guatemala, with its principal place of business in Guatemala. ECF No. 1, ¶ 4. Sigma filed claims for arbitration against Guatemala for payment under three separate construction contracts dated November 21, 2000, September 25, 2006, and November 21, 2000, respectively. *Id.* ¶ 10; ECF No. 28 at 10. Guatemalan law governs each of the contracts. ECF No. 1, ¶ 12; ECF No. 28 at 13. In each arbitration, the tribunal issued an award ("the Awards") in Sigma's favor:

- The first award was rendered in the case of *Sigma Constructores, Sociedad Anónima v. Republic of Guatemala*, Arbitration and Conciliation Center of the Guatemalan Chamber of Commerce Case No. 13-2018, on September 20, 2019 ("Award 1"). ECF No. 1, ¶ 1(a); ECF No. 1-2 (certified translation of Award 1).

- The second award was rendered in the case of *Sigma Constructores, Sociedad Anónima v. Republic of Guatemala*, Cenac Foundation, Arbitration and Conciliation Center Case No. 11-2019, on February 2, 2021 ("Award 2"). ECF No. 1, ¶ 1(b); ECF No. 1-3 (certified translation of Award 2).

- The third award was rendered in the case of *Sigma Constructores, Sociedad Anónima v. Republic of Guatemala*, Arbitration and Conciliation Center of the Guatemalan Chamber of Commerce Case No. 10-2019 ("Award 3"). ECF No. 1, ¶ 1(c); ECF No. 1-4 (certified translation of Award 3).

Guatemala challenged each of these Awards through proceedings in Guatemalan courts. The Parties generally dispute the status of the Awards in light of the Guatemalan proceedings. To date, Guatemala has not paid any portion of the Awards to Sigma and continues to dispute the enforceability of the Awards. ECF No. 1, ¶¶ 30, 39, 48; ECF No. 28 at 9.

On June 10, 2022, Sigma filed a Petition in this Court seeking an order and judgment confirming the Awards against Guatemala pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"). *See* ECF No. 1.

## ANALYSIS

Guatemala moves to dismiss Sigma's Petition: (1) for lack of subject matter jurisdiction under the New York Convention, as codified by the Federal Arbitration Act, and the Foreign Sovereign Immunities Act; (2) on the basis of *forum non conveniens*; and (3) on the grounds of international comity.  ECF No. 28.  In the alternative, Guatemala seeks to stay the proceedings in this Court pending disposition of proceedings in Guatemala.  *See id.*  Following the filing of the opposition and reply, Sigma moved to file a surreply, which this Court granted.  ECF No. 43. Guatemala's Motion is ripe for consideration.

Although Guatemala also moves to dismiss the Petition pursuant to Federal Rules of Civil Procedure 12(b)(2), (5), and (6), Guatemala does not include the "specific points of law and authority that support the motion" on these grounds.  LCvR 7(a).  Given Guatemala's failure to articulate any support for its arguments, the Court need not consider these grounds.  *See Arizona v. Shalala*, 121 F. Supp. 2d 40, 46 n.4 (D.D.C. 2000) (stating "courts should not address an asserted but unanalyzed argument because . . . courts do not sit as self-directed boards of legal inquiry and research" (internal quotation marks and citation omitted)).

### I.    Standard of Review

Guatemala moves to dismiss the Petition pursuant to Rule 12(b)(1) on the basis that this Court lacks subject matter jurisdiction under the New York Convention, as codified by the Federal Arbitration Act, and the Foreign Sovereign Immunities Act.  *See* ECF No. 28 at 19–22, 29–30.

To exercise subject matter jurisdiction over an action seeking to enforce a foreign arbitral award against a foreign sovereign, the Court must satisfy itself of two requirements: "First, there must be a basis upon which a court in the United States may enforce a foreign arbitral award; and second, [Guatemala] must not enjoy sovereign immunity from such an enforcement action."  *Stati*

*v. Republic of Kazakhstan*, 199 F. Supp. 3d 179, 184 (D.D.C. 2016) (quoting *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 121 (D.C. Cir. 1999)).

The New York Convention provides for the "recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought." United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards art. I, ¶ 1, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 ("New York Convention"). Both the United States and Guatemala are signatories of the New York Convention.

The Federal Arbitration Act ("FAA") provides a federal cause of action under the New York Convention. *See* 9 U.S.C. § 201 (codifying New York Convention); *id.* § 203 ("An action or proceeding falling under the [New York] Convention shall be deemed to arise under the laws and treaties of the United States."). In actions to confirm arbitral awards, the FAA states "[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions." *Id.* § 6. Through this provision, Congress sought "to streamline the procedures for confirming arbitral awards." *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 585 (D.C. Cir. 2020) ("*P&ID*").

## II.    Subject Matter Jurisdiction

Guatemala's arguments under Rule 12(b)(1) are essentially that: (1) Sigma failed to name the proper treaty in its Petition; and (2) Sigma failed to allege that Guatemala's Ministry of Communications, Infrastructure, and Housing (the "Ministry") is an agency or instrumentality of Guatemala under the Foreign Sovereign Immunities Act ("FSIA"). ECF No. 28 at 19–22, 29–30. In response, Sigma argues that it named the proper treaty, the New York Convention, and that it named the proper party, Guatemala, in its Petition. ECF No. 30 at 23–33. In framing the discussion in this manner, neither Party precisely addresses the relevant inquiry into this Court's

subject matter jurisdiction. The Court may satisfy itself of its jurisdiction if: (A) it may enforce the Awards pursuant to the FAA; and (B) one of the exceptions to immunity under the FSIA applies.

As a preliminary matter, Guatemala does not renew its jurisdictional arguments on Reply. Sigma argues this omission operates as a concession. *See* ECF No. 43 at 1–2. Although some courts have deemed arguments not addressed on reply as conceded, the Court is not required to do so. *See generally* Fed. R. Civ. P. 7(b); LCvR 7(d). Because the Court must "always assure itself of its subject-matter jurisdiction regardless of whether a party has raised a challenge," the Court will address these jurisdictional questions. *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 511 (D.C. Cir. 2018); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (stating "subject-matter delineations must be policed by the courts on their own initiative"); Fed. R. Civ. P. 12(h)(3).

### A.    Federal Arbitration Act

Guatemala's first argument is that Sigma failed to name the proper treaty in its Petition. ECF No. 28 at 19. Although Sigma brought its action pursuant to the New York Convention, Guatemala argues that the Inter-American Convention on International Commercial Arbitration ("the Panama Convention") governs this action. *See id.* Sigma responds that the Panama Convention applies only to international arbitrations and not to the "purely domestic" arbitrations at issue. ECF No. 30 at 28. After all, the underlying contracts and arbitrations involved Guatemalan parties, Guatemalan tribunals, and Guatemalan law. *Id.* at 29; *accord* ECF No. 28 at 20. Guatemala's argument that Sigma's purported failure to identify the proper treaty deprives this Court of subject matter jurisdiction is unavailing. Notably, Guatemala does not expressly argue this Court lacks subject matter jurisdiction under the FAA. Nor could it. Although Guatemala

argues that the Panama Convention applies, the FAA allows a cause of action to lie pursuant to either Convention.

Both the New York Convention and the Panama Convention "allow courts in one country to enforce arbitral awards rendered in other signatory countries." *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 933 (D.C. Cir. 2007) (quoting *TermoRio S.A. E.S.P. v. Electrificadora del Atlantico S.A. E.S.P.*, 421 F. Supp. 2d 87, 91 (D.D.C. 2006)); *see* 9 U.S.C. §§ 201–02 (New York Convention); *id.* §§ 301–02 (Panama Convention); *see also* New York Convention, art. I, ¶ 1; Inter-American Convention on International Commercial Arbitration, arts. 1, 4, Jan. 30, 1975, O.A.S.T.S. No. 42 ("Panama Convention").  Through the FAA, Congress established private causes of action under both Conventions.  *See* 9 U.S.C. §§ 201, 203 (New York Convention); *id.* §§ 301, 303 (Panama Convention).  Unlike the New York Convention, the Panama Convention only applies to agreements involving Organization of American States ("OAS") member-states and their citizens, provided the respective state has ratified or acceded to the Convention.  *Id.* § 305(1); Panama Convention, art. 7.  When the requirements of both Conventions are met, the Panama Convention applies.  9 U.S.C. § 305.  The New York Convention applies to all other disputes.  *Id.*

Here, the Parties agree the requirements of both Conventions are met but disagree on which Convention applies.  *See generally* ECF No. 28 at 19–20; ECF No. 30 at 28–29.  The Parties' dispute is limited to one academic question: whether the Panama Convention applies to "purely domestic" disputes.  Neither Party identifies any binding authority or decision of this Court delineating between the two Conventions, nor has the Court located such authority.  Despite the perceived disagreement, the Court need not answer the question.  Regardless of which Convention

applies, the ultimate substantive outcome with respect to Sigma's Petition is the same for two reasons.

First, as a practical matter, "the relevant provisions of the Panama Convention and the New York Convention are substantively identical." *TermoRio*, 487 F.3d at 933; *accord Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 45 (2d Cir. 1994) ("The legislative history of the Inter-American Convention's implementing statute . . . clearly demonstrates that Congress intended the Inter-American Convention to reach the same results as those reached under the New York Convention . . . ."); *Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venezuela*, 850 F. App'x 218, 225 n.6 (5th Cir. 2021) (unpublished) ("[T]he Panama Convention and New York Convention have 'substantively identical' provisions regarding the enforcement of arbitral awards." (quoting *TermoRio*, 487 F.3d at 933)). Indeed, the FAA chapter enforcing the Panama Convention expressly incorporates the provisions enforcing the New York Convention on jurisdiction, venue, removal, and confirmation of an arbitral award, among other things. *See* 9 U.S.C. § 302 ("Sections 202, 203, 204, 205, and 207 of this title shall apply to this chapter as if specifically set forth herein, except that for the purposes of this chapter 'the Convention' shall mean the Inter-American Convention."). In fact, neither Party has argued that the application of one Convention over another would render a different result.

Because the provisions are substantively identical, case law applying either Convention is interchangeable.[2] *See, e.g.*, *TermoRio*, 421 F. Supp. 2d at 91 n.4 (acknowledging argument that the Panama Convention applies but stating "codification of the Panama Convention incorporates

---

[2]    On Reply, Guatemala relies on cases applying the New York Convention and invokes article VI of the New York Convention to support its alternative argument for a stay. *See, e.g.*, ECF No. 38 at 21.

by reference the relevant provisions of the New York Convention, making discussion of the Panama Convention unnecessary" (citing 9 U.S.C. § 302)); *Técnicas Reunidas de Talara S.A.C. v. SSK Ingeniería y Construcción S.A.C.*, 40 F.4th 1339, 1344 (11th Cir. 2022) ("[I]t is well-settled that where the New York and Panama Conventions are substantively the same, . . . decisions under the New York Convention apply with equal force to cases under the Panama Convention." (citing 9. U.S.C. § 302)); *Goldgroup Res., Inc. v. DynaResource de Mexico, S.A. de C.V.*, 994 F.3d 1181, 1188 n.4 (10th Cir. 2021) ("Because '[t]here is no substantive difference' between the two conventions and the defenses under each are the same, we consider cases interpreting both conventions and refer generally to the 'Convention.'" (quoting *Corporación Mexicana de Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración y Producción*, 832 F.3d 92, 105 (2d Cir. 2016))). Here, the Parties agree that at least one of the Conventions applies to the Petition. Because the Court's application of either Convention results in the same outcome on the merits, an action arising under the FAA plainly exists.

Second, even accepting Guatemala's argument that the Panama Convention does apply, Sigma's failure to cite that treaty does not warrant dismissal. In its Opposition, Sigma focuses on whether it met Rule 8 pleading standards. *See* ECF No. 30 at 32–33. Rule 8, however, does not govern the analysis. Courts consider petitions to confirm arbitral awards "in the manner provided by law for the making and hearing of motions." 9 U.S.C. § 6.[3] This means "motions to enforce arbitral awards should proceed under motions practice, not notice pleading." *TermoRio*, 487 F.3d at 940; *see, e.g.*, *Tatneft v. Ukraine*, 301 F. Supp. 3d 175, 190–91 (D.D.C. 2018), *aff'd* 771 F.

---

[3]    Section 6 of the FAA applies to actions brought under both the New York Convention and the Panama Convention. *See* 9. U.S.C. § 208 (applying Chapter 1 provisions, including Section 6, "to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the [New York] Convention as ratified by the United States"); *id.* § 307 (same as to the Panama Convention).

App'x 9 (D.C. Cir. 2019) (per curiam) (unpublished) (considering jurisdictional argument despite fact that statutory provision "was not specifically mentioned in the Petition" because the respondent "had ample opportunity to respond to this argument in its Reply to the Motion to Dismiss"). Thus, the Court "may treat [Guatemala's] motion to dismiss, which was styled as responding to a pleading under Rule 12(b)(1), as a proper motion under Rule 7(b)." *P&ID*, 962 F.3d at 585. Here, a review of all submissions reflects factors necessary to establish subject matter jurisdiction under the Panama Convention. *See, e.g.*, *Technologists, Inc. v. Mir's Ltd.*, 725 F. Supp. 2d 120, 129 (D.D.C. 2010) (concluding petitioner met burden of establishing jurisdiction through briefing and the factual record from the arbitration proceeding attached to the petition, despite petitioner failing to plead jurisdiction). Sigma seeks enforcement of arbitral awards rendered for contracts between a citizen of Guatemala and the Republic of Guatemala, and Guatemala is an OAS member-state that has acceded to the Panama Convention. *See* ECF No. 28 at 20; ECF No. 30 at 33.

Accordingly, under either Convention, Sigma has sufficiently alleged an action arising under the FAA. For the sake of simplicity, the Court references the New York Convention when discussing both Conventions.

### B.    Foreign Sovereign Immunities Act

Guatemala next argues that the Petition should be dismissed because it fails to allege that the Ministry is an agency or instrumentality of Guatemala under the FSIA. ECF No. 28 at 29–30. According to Guatemala, Sigma's counterparty in the underlying contracts and arbitral awards was the Ministry, not Guatemala, and thus the Court may not exercise subject matter jurisdiction over the Ministry without sufficient allegations that the Ministry is not an agency or instrumentality of Guatemala. *Id.* In response, Sigma argues that Guatemala, not the Ministry, was the named party in the contracts, in the arbitrations, and in the awards. ECF No. 30 at 23–26. Sigma further argues

that, as counsel for Guatemala conceded at the October 20, 2023 status conference before this Court, the Ministry does not have an independent legal personality under Guatemalan law. *Id.* at 26–27. Guatemala's argument fails.

In every action against a foreign sovereign, a court may only exercise jurisdiction when an exception to immunity under the FSIA applies. *See Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 (1983); 28 U.S.C. §§ 1330(a), 1604; *see also Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). In an action seeking to confirm an arbitral award, the Court has jurisdiction under the FSIA's arbitration exception when it finds: (1) "the existence of an arbitration agreement"; (2) "an arbitration award"; and (3) "a treaty governing the award." *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877 (D.C. Cir. 2021) (citing *Chevron Corp. v. Ecuador*, 795 F.3d 200, 204 (D.C. Cir. 2015)); *see* 28 U.S.C. § 1605(a)(6)(B).

Here, there is no real dispute that the arbitration exception applies. There are three arbitration agreements at issue. ECF No. 1, ¶ 1; ECF No. 28 at 9. For each agreement, the underlying tribunal issued an award against Guatemala. *Id.* And finally, both Parties recognize that one of the Conventions governs the awards. ECF No. 1, ¶ 3; ECF No. 28 at 11. Under these circumstances, Guatemala does not enjoy immunity from Sigma's suit.

Guatemala argues without any support that the Ministry, not Guatemala, was the party against whom Sigma should have brought this action. ECF No. 28 at 29–30. This argument is baseless. It is clear that Guatemala, not the Ministry, is Sigma's contractual counterparty. Each signatory to the contracts was acting as a duly-authorized representative of the government of Guatemala. *See* ECF No. 1-5 at 3 (stating one party was "Acting in Representation of the State of Guatemala, by delegation bestowed by the Minister of Communications, Infrastructure and Housing") (certified translation of Contract 1); ECF No. 1-6 at 2 ("To enter this contract, I act as

legal representative of the state of Guatemala, by delegation granted by the Ministry of Communications, Infrastructure and Housing . . . .") (certified translation of Contract 2); ECF No. 1-7 at 3 ("I hereby act for the execution of this agreement representing the State of Guatemala, by delegation granted by the Minister of Communications, Infrastructure, and Housing . . . .") (certified translation of Contract 3).  The three arbitral awards, moreover, list Guatemala as the responding party.  ECF No. 1-2 at 3, 4, 36 (stating the award is issued "against the state of Guatemala (hereinafter referred to as THE STATE or THE RESPONDENT)") (certified translation of Award 1); ECF No. 1-3 at 4, 42 (ordering "The STATE of Guatemala" to pay the amounts awarded to Sigma) (certified translation of Award 2); ECF No. 1-4 at 4, 41 (recording the "State of Guatemala" as the "Respondent Party") (certified translation of Award 3).

Guatemala's argument, which borders on frivolous, would fail even if the Ministry were the named counterparty on the contracts.  As Guatemala's counsel admitted, the Ministry is an agency of the Guatemalan government and not a separate sovereign entity.  As such, Guatemala is the real party in interest in any event.  Guatemala's positions here are particularly troubling given the admissions it made in this case in open court.  In response to the Court's question as to whether the Ministry was "an agency of the Republic of Guatemala," Guatemala's counsel confirmed that the "Ministry does not have a separate legal personality.  No.  The Ministry is part of the administrative division of the executive function of the government . . . ."  Tr. Status Conf. 6:13–22, ECF No. 26.  Although Guatemala went on to claim that the Ministry had autonomy to enter into contracts and engage in financial transactions, that merely speaks to the Ministry's authority to act on behalf of and bind Guatemala, not whether it is a separate entity from the government. Moreover, all counsel from Greenberg Traurig have entered their appearances on behalf of "The Republic of Guatemala," and directed Sigma as to the proper way to serve the Republic, which

*included* serving the Ministry.  Tr. Status Conf. 9:7–11, ECF No. 26; ECF No. 23-4 at 2 ("You can represent that we advised Petitioner since August that compliance with Guatemalan law likely required adding the Ministry to the form and, as we stated at the hearing, have no objection to the inclusion of the Ministry in the form, while preserving all rights and defenses.").  Guatemala cannot now argue that service was improper because the Ministry, not the Republic, is the only real party in interest.

### III.    *Forum Non Conveniens*

Guatemala next seeks to dismiss this action on the basis of *forum non conveniens*. Guatemala argues that: (1) Guatemala is an alternative forum with jurisdiction to hear the case; and (2) public and private interest factors weigh in favor of dismissing the case in favor of a foreign court.  ECF No. 28 at 25–29.  Sigma responds that *forum non conveniens* is not available in proceedings to confirm a foreign arbitral award in this Circuit.  ECF No. 30 at 9.  Sigma is correct.

As an initial matter, Sigma argues on Surreply that the Court should deem Guatemala's arguments waived because Guatemala raised its principal theory supporting *forum non conveniens* for the first time on Reply.  *See* ECF No. 43 at 5.  Courts generally do not entertain arguments raised for the first time in a reply brief.  *See McBride v. Merrell Dow & Pharms., Inc.*, 800 F.2d 1208, 1210 (D.C. Cir. 1986); *see, e.g.*, *Hight v. United States Dep't of Homeland Sec.*, 533 F. Supp. 3d 21, 30 (D.D.C. 2021).  The D.C. Circuit has explained that considering such arguments is "not only unfair to [the other party], but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered."  *McBride*, 800 F.2d at 1211 (citations omitted).  The responding party alleviates these concerns, however, when it files a surreply.  *See, e.g.*, *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 36–37 (D.D.C. 2010) (noting that by filing a surreply, "plaintiffs effectively negated the policy reasons for not allowing consideration of the new

argument: the burden of being made to submit a response to it and the concern that the Court will not be fully briefed on it"). Because Sigma was allowed the opportunity to file a surreply, the Court declines to deem the argument waived.

Turning to the substance, a "*forum non conveniens* dismissal . . . is a determination that the merits should be adjudicated elsewhere, even when jurisdiction is [otherwise] authorized." *Tatneft v. Ukraine*, 21 F.4th 829, 840 (D.C. Cir. 2021) (citations omitted). The Court must decide "(1) whether an adequate alternative forum for the dispute is available and, if so, (2) whether a balancing of private and public interest factors strongly favors dismissal." *Id.* (citation omitted). The D.C. Circuit has clearly stated that, in proceedings to confirm a foreign arbitral award, "*forum non conveniens* is not available . . . because only U.S. courts can attach foreign commercial assets found within the United States." *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1105 (D.C. Cir. 2024) (quoting *Stileks*, 985 F.3d at 876 n.1). In other words, at the first step of the analysis, "no adequate alternative forum outside the U.S. exists." *Tatneft*, 21 F.4th at 840.

Here, Sigma requests this Court enter judgment against Guatemala in the full amount of the three Awards, plus interest. ECF No. 1 at 21. If Sigma prevails, only a U.S. court may "attach the commercial property of a foreign nation located in the United States." *TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296, 303 (D.C. Cir. 2005) (citing 28 U.S.C. §§ 1609, 1610(a)(6)). Accordingly, "there is no other forum," including Guatemala, "in which [Sigma] could reach [Guatemala's] property, if any, in the United States." *Id.* at 304. Because "no adequate alternative forum outside the U.S. exists," the Court "need not weigh any factors favoring dismissal." *Id.* at 303; *Tatneft*, 21 F.4th at 840.

13

Guatemala's attempt to distinguish this case from *TMR Energy* and its progeny fails. Guatemala argues *TMR Energy* applies only in the context of "genuinely *international* disputes" and cites thirteen decisions in this Circuit in which courts have refused to dismiss actions to confirm arbitral awards based on *forum non conveniens.* ECF No. 38 at 15–19. Guatemala claims these cases are "fundamentally distinguishable" because each "concerned an award arising out of a genuinely international dispute." *Id.* at 19. None of these cases, however, turn on a distinction between "genuinely international" and "purely domestic" arbitrations. Rather, *TMR Energy* and its progeny focus on the availability of a forum to grant relief to the petitioner. *See TMR Energy*, 411 F.3d at 303. And here, there is no available forum other than this Court to attach Guatemala's property in the United States.

Finally, Guatemala's reliance on several decisions from the Second Circuit is unavailing. ECF No. 28 at 26 (citing *Aenergy S.A. v. Republic of Angola*, 31 F.4th 119 (2d. Cir. 2022)); ECF No. 38 at 10–11 (first citing *Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384 (2d. Cir. 2011); and then citing *In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488 (2d. Cir. 2002)). As Guatemala acknowledges, the D.C. Circuit and the Second Circuit are split on this issue. ECF No. 28 at 28; *Figueiredo*, 665 F.3d at 391 ("To the extent that the District of Columbia Circuit in *TMR Energy* considered a foreign forum inadequate because the foreign defendant's precise asset in this country can be attached only here, we respectfully disagree."); *Stileks*, 985 F.3d at 876 n.1 (declining to "reconsider *TMR Energy* in light of the Second Circuit's reasoning" in *Figueiredo* because "we are bound by our precedent"). D.C. Circuit precedent, of course, is binding on this Court.

## IV.    Comity

Guatemala next requests that the Court dismiss the Petition under the "principles of international comity," which Guatemala describes as an "abstention principle." ECF No. 28 at 22–25. According to Guatemala, international comity warrants dismissal because: (1) enforcing Sigma's Awards would violate Guatemala's public finance laws; and (2) there are pending proceedings in Guatemala related to the Awards. *See* ECF No. 28 at 24–25. Although Sigma raises several points in response, the Court need not address them because international comity is plainly not available here as an avenue for dismissal. Further, notwithstanding Sigma's arguments on Surreply, the Court also declines to deem Guatemala's arguments on this point waived.

International comity "is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation." *Usoyan v. Republic of Turkey*, 6 F.4th 31, 48 (D.C. Cir. 2021) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)). The FAA requires the Court to confirm arbitral awards under the Convention "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207; *see Newco Ltd. v. Gov't of Belize*, 650 F. App'x 14, 16 (D.C. Cir. 2016) (unpublished) (noting the FAA requires courts to enforce awards unless one of the grounds for refusal applies (citing 9 U.S.C. § 207)). Article V, which provides those express grounds, does not include international comity. *See* New York Convention, art. V. Regardless of how Guatemala views these proceedings as related to international comity *in the abstract*, Guatemala cites no binding precedent showing district courts can dismiss petitions under the Convention because of

international comity concerns.[4]  The Court, accordingly, has no authority to grant Guatemala this

relief.

**V.    Stay**

The Court turns to Guatemala's alternative motion for a stay.  Guatemala requests that the

Court hold this case in abeyance pending full disposition of the litigation in Guatemala because

the Awards are "neither settled nor undisputed."  *See* ECF No. 28 at 30–33; ECF No. 38 at 20–26.

Sigma argues a stay is unwarranted because all three Awards are final, and Sigma asserts it will

face continued hardship if a stay is granted.  *See* ECF No. 30 at 9–10, 41; ECF No. 43 at 6–11.

The Court finds that a stay is unwarranted at this juncture.

Guatemala bears the burden of establishing that a stay is appropriate due to "hardship or

inequity."  *See Landis v. N. Am. Co.*, 299 U.S. 248, 255–56 (1936).  The Court has "broad

discretion to stay proceedings as an incident to its power to control its own docket."  *Stileks*, 985

F.3d at 880 (quoting *Clinton v. Jones*, 520 U.S. 681, 706 (1997)).  Under the FAA, the Court may

enter a stay only "[i]f an application for the setting aside or suspension of the award has been made

to a competent authority."  New York Convention art. VI; *see id.* art. V(1)(e) (stating a competent

authority must be "of the country in which, or under the law of which, that award was made");

*Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 731 (D.C. Cir. 2012).  Even then, within

those confines, the Court maintains broad discretion to impose a stay "if it considers it proper."

New York Convention art. VI; *see Stileks*, 985 F.3d at 880.  The Court's limited authority to stay

these proceedings reflects the "emphatic federal policy in favor of arbitral dispute resolution"

---

[4]    Guatemala's reliance on the Second Circuit's decision in *Figueiredo Ferraz Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384 (2d Cir. 2011), which does not bind this Court, is unavailing.  Moreover, the *Figueiredo* court discussed international comity in the context of its *forum non conveniens* dismissal as a public interest factor.  *See* 665 F.3d at 391–92.  The court did not consider international comity as an independent basis to dismiss the action.

underlying the FAA.  *See Belize Soc. Dev.*, 668 F.3d at 733 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).

Guatemala invokes Article VI of the New York Convention.  ECF No. 38 at 21.  Sigma argues that Article VI is inapplicable because the Awards are not subject to set aside proceedings.  ECF No. 43 at 7.  Both Parties submit competing declarations explaining the complex history of proceedings in Guatemala.  *See* ECF No. 28-8; ECF No. 30-1; ECF No. 30-10; ECF No. 38-1.  Although the Parties agree some proceedings are ongoing, the significance of those proceedings remains hotly contested.  The Court's determination of whether a stay is appropriate rests on an understanding of Guatemalan law and the status of current proceedings.

At this stage, the Court declines to stay the case.  No Party has moved for a decision on the merits, so the question of a stay is premature.  Guatemala's only "case of hardship or inequity in being required to go forward" is continued litigation.  *Landis*, 299 U.S. at 255; *see* ECF No. 38 at 26.  Continued litigation is not a hardship that justifies a stay.  *See Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971) (rejecting "economy of time for itself, for counsel, and for litigants" as a justification for a stay).  The appropriate time to consider the merits of a stay may be when the Parties seek relief on the merits of the Petition.  At that point, the status of proceedings in Guatemala may have changed.  The Court, thus, declines to venture into Guatemalan law until the appropriate juncture.

## CONCLUSION

For the foregoing reasons, the undersigned recommends that Guatemala's Motion to Dismiss the Petition be DENIED and Guatemala's Motion to Hold the Case in Abeyance be DENIED WITHOUT PREJUDICE.

**SO ORDERED.**

Date:   February 13, 2025

_____
MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE

## **Local Civil Rule 72.3(b) Notice**

The Parties are hereby advised that under Local Civil Rule 72.3(b), any party who objects to the proposed findings or recommendations herein must file written objections within fourteen days of being served with a copy of the Report and Recommendation. Objections must specifically identify the portion of the recommendation to which the objection pertains and the basis for the objection. The Parties are further advised that they may waive their right of appeal from an order of the District Court adopting such findings and recommendations if the Parties fail to file timely objections to the findings and recommendation set forth in this Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985).

\* \* \*